IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

STEPHANIE ALVAREZ,                    §
                                      §
            *Plaintiff,*               §          SA-22-CV-01275-ESC
                                      §
vs.                                   §
                                      §
KILOLO KIJAKAZI,                      §
                                      §
            *Defendant.*               §


## **ORDER**

This order concerns Plaintiff Stephanie Alvarez's request for review of the administrative denial of her application for disability insurance benefits ("DIB") under Title II.  42 U.S.C. §§ 405(g), 1383(c)(3).  The Court held a hearing on Plaintiff's claims on October 19, 2023, at which counsel for both parties appeared via videoconference.  After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#17], the transcript ("Tr.") of the Social Security Administration ("SSA") proceedings [#8], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the Administrative Law Judge ("ALJ") erred in her analysis of the medical opinion of Dr. Danielle Walz and substantial evidence does not support the ALJ's finding regarding Alvarez's standing and walking capabilities.  Because these errors were not harmless, the Court will vacate the Commissioner's decision finding Plaintiff not disabled and remand this case for further proceedings consistent with this opinion.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#21].

## II.  Legal Standards

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.  *Id.*  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the administrative law judge's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve.  *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### III.  Factual and Procedural Background

Plaintiff Stephanie Alvarez filed her application for DIB in September 2020, alleging disability beginning March 15, 2020.  (Tr. 225.)  At the time she filed her application, Alvarez was a younger individual, but she changed age categories to "closely approaching advanced age" (age 50–54) before the ALJ issued her decision.  (*Id.*)  Alvarez has a limited educational background and work experience as a waitress, manager, and cashier at a restaurant.  (Tr. 55, 235, 257.)  The conditions upon which Alvarez based her DIB application were fibromyalgia, restless leg syndrome, chronic sciatica nerve pain, hypertension, obesity, depression and anxiety, irritable bowel syndrome, chronic fatigue, insomnia, and diabetes.  (Tr. 256.)

Alvarez completed an Adult Function Report in conjunction with her application for benefits, in which she describes the "excruciating pain" caused by her fibromyalgia.  (Tr. 244.) According to Alvarez, she needs assistance from her husband for most of her personal care and activities of daily living due to pain.  (Tr. 245–47.)  Alvarez claims she can lift no more than five pounds, can stand no more than 30 minutes at a time, and has trouble sitting for prolonged periods due to her pain.  (Tr. 249.)

The Commissioner initially denied Alvarez's application on January 20, 2021 (Tr. 67–80), and again denied the application upon reconsideration on May 21, 2021 (Tr. 81–99).  In both determinations, the State Agency Medical Consultants ("SAMCs") found Alvarez's fibromyalgia to be her only severe impairment.  (Tr. 72–76, 88–97.)  Dr. Anita Hedge, at the initial level of review, assessed Alvarez with the residual functional capacity ("RFC") to perform light work with certain additional postural limitations and the ability to perform several jobs in the national economy at that level.  (Tr. 76.)  Dr. Patty Rowley, at the reconsideration level of review, assessed Alvarez with a more limited ability to perform only sedentary work, after reviewing additional medical evidence, but imposed the same postural limitations.  (Tr. 92–97.)  Dr. Rowley found that Alvarez was unable to perform her past relevant work because it required the ability to perform work at the light exertional level but then concluded Alvarez could perform other jobs in the national economy at the sedentary level.  (Tr. 96–97.)

Alvarez requested a hearing before an ALJ, which was held before ALJ Penny Wilkov on December 28, 2020.  (Tr. 45–66.)  Alvarez's counsel argued at the hearing that her pain treatment is not providing enough relief for Alvarez to be able to independently perform even her activities of daily living.  (Tr. 50.)  Alvarez testified about the intensity of her pain and qualified it as severe every day, with the lowest pain level she experiences on any given day to be a level of eight to nine on a ten-point scale.  (Tr. 58.)

The ALJ issued an unfavorable decision on March 23, 2022, after applying the five-step sequential review process to the evidence in the record.  (Tr. 15–30.)  At step one, the ALJ found that Alvarez meets the insured status requirements of the SSA and has not engaged in substantial gainful activity since March 15, 2020, the alleged disability onset date.  (Tr. 17.)  At step two, the ALJ found Alvarez to have the severe impairments of fibromyalgia, obesity, chronic pain

syndrome, neuralgia, degenerative joint disease, and osteoarthritis of the left knee.  (Tr. 17–19.)
At step three, the ALJ concluded Alvarez does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the listed impairments so as to
be considered presumptively disabled.  (Tr. 20–22.)

Prior to step four, the ALJ assessed Alvarez with the RFC to perform at a light exertional
level with additional non-exertional limitations.   (Tr. 22.)   Based on this RFC, the ALJ
concluded at step four that Alvarez is capable of performing her past relevant work as waitress,
assistant manager, and restaurant manager.  (Tr. 27–28.)  The ALJ also made an alternative step
five finding that Alvarez can perform the work of a cashier II, small-products assembler, and
merchandise maker and is therefore not disabled.  (Tr. 28–29.)

Alvarez requested review from the Appeals Council, but it denied review on October 5,
2022.  (Tr. 1–8.)  Alvarez then requested judicial review by filing this case on November 28,
2022.

## IV.  Analysis

Alvarez raises one overarching point of error in this appeal—that the ALJ's RFC is
contrary to law and not supported by substantial evidence.  The Court clarified during oral
argument that Alvarez is primarily challenging the aspect of the RFC pertaining to standing and
walking.  Alvarez contends that her medical records demonstrate that her ability to stand and
walk is significantly limited by her fibromyalgia, and the ALJ's conclusion that she can stand
and walk for six out of eight hours in a workday is not supported by substantial evidence.
Alvarez takes specific issue with the ALJ's assessment and rejection of the medical opinion of
consultative examiner Dr. Danielle Walz, who found Alvarez to have severe limitations in
standing and walking.  The Court agrees that the ALJ's treatment of Dr. Walz's opinion was

legally flawed; the ALJ's finding as to Alvarez's standing and walking capabilities is not supported by substantial evidence; and Alvarez is entitled to remand.

An RFC determination is the most an individual can still do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* § 404.1545(a)(1)–(3).  The relative weight given to the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  However, the ALJ's discretion is not boundless; she must still build a "logical bridge" between the medical evidence and the ultimate RFC determination.  *Price v. Astrue*, 401 Fed. App'x 985, 986 (5th Cir. 2010).  If the ALJ's stated reasons for reaching her conclusion could not be accepted by "a reasonable mind," there is not substantial evidence to support the ALJ's denial of benefits.  *Newton*, 209 F.3d at 452. Furthermore, an unsupportable RFC determination may not be saved by post-hoc justifications offered by the Commissioner; "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Id.* at 455.

Here, the ALJ assessed Alvarez with the RFC to perform light work as defined in the regulations with additional non-exertional limitations.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  The primary difference between sedentary and most light jobs is that light work "requires a good deal of walking or standing."  *Id.*  "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday." Determining Capability to Do Other Work, Social Security Regulation ("SSR") 83–10, 1983 WL

31251, at *6 (S.S.A. Jan. 1, 1983).  "Sitting may occur intermittently during the remaining time." *Id.*

In reaching the conclusion that Alvarez is capable of light work and its accompanying standing and walking requirements, the ALJ rejected the medical opinion of Dr. Walz as unpersuasive.  (Tr. 26.)  Alvarez argues the ALJ's stated reasons for rejecting the opinion have no support in the record and are not reasonable.  The Court agrees.

Dr. Walz performed an in-person consultative examination of Alvarez in April 2021 and provided a medical opinion on Alvarez's ability to work.  (Tr. 475–79.)  In her four-page narrative report, Dr. Walz summarized the history of Alvarez's impairments and Alvarez's chief complaints as presented at the examination.  (Tr. 475–77.)  Dr. Walz noted that Alvarez complained primarily of pain related to her fibromyalgia and listed the medications Alvarez takes for pain management.   (Tr. 475.)   Dr. Walz reported that Alvarez claimed to be experiencing "constant pain all over her body"; that her pain ranges from "aching/throbbing type pain to sharp shooting pain to burning pain in the arms;" that pain worsens with activity; that she has difficulty walking and holding things due to the pain her knees, legs, arms, and hands; and that she is never pain-free.  (Tr. 475–76.)  Per Dr. Walz's notes, Alvarez explained that she has not had significant success with her medications or alternative pain treatments, such as ketamine infusions, which "made her nauseated, weak, and confused."  (Tr. 475.)  Alvarez also relayed to Dr. Walz that she suffers from severe sciatic nerve pain, which she experiences as "sharp or electric in nature" in her lower extremities and "sharp stabbing" pain in her low back, and the medications she takes to treat this condition help only minimally.  (Tr. 476.)  According to the report, Alvarez uses a walker, cane, and left knee brace 100% of the time, but none of these were prescribed by a treating provider.  (*Id.*)  Dr. Walz noted that Alvarez reported only being able to

7

stand for five minutes due to shooting pain and only being able to walk a quarter of a flat city block at a time.  (Tr. 476–77.)

Dr. Walz then summarized the findings of her physical examination and made certain diagnoses and opinions as to Alvarez's functional capacity limitations.  (Tr. 477–79.)  Dr. Walz noted that Alvarez did not present to the examination with an assistive device but appeared "very uncomfortable as if she were in pain throughout the visit" and "[s]he frequently shifted and changed position throughout the exam."  (Tr. 478.)  Dr. Walz also recorded the results of her palpation of Alvarez's knees, shoulders, and spine, finding tenderness over the paraspinal muscles in Alvarez's lumbar, thoracic, and cervical spines, as well as both knees and both shoulders.  (Id.)  Although Alvarez had normal musculoskeletal alignment and 4/5 strength in her upper and lower extremities, she presented with decreased range of motion in her extremities and back, as well as leg pain during a straight leg test.  (Id.)  Alvarez's gait was described as slow and antalgic, and it was noted that Alvarez could walk heel-to-toe (but was holding on to a table) and was "very dizzy trying to do this."  (Id.)  Based on these observations and the diagnoses of fibromyalgia and sciatica to her bilateral lower extremities (as well as other conditions), Dr. Walz concluded that Alvarez had "severe limitations" in sitting, standing, and walking and "severe limitations" in postural activities.  (Tr. 479.)

The ALJ dismissed Dr. Walz's examination findings as not persuasive for the following reasons: (1) Dr. Walz's findings were based largely upon Alvarez's subjective reports; (2) Dr. Walz's findings were "vague and non-specific" in nature; (3) Dr. Walz did not have access to the totality of Alvarez's medical records or "detailed knowledge of or familiarity with the policies and evidentiary requirements of SSA's disability program"; (4) Dr. Walz's opinions were not "fully supportable" by Dr. Walz's own objective findings nor "entirely consistent" with other

objective medical findings.   (Tr. 26.)   In her discussion of Dr. Walz's opinion, the ALJ referenced medical records reflecting Alvarez's normal gait: Alvarez's pain relief records from August through November 2021 repeatedly note that she was ambulating without difficulty but also presenting with decreased range of motion in all joints.  (Tr. 26, 586, 588, 590, 592, 594, 596.)  The ALJ also referenced the normal x-ray of Alvarez's left femur and an x-ray reflecting only moderate osteoarthritic changes to Alvarez's left knee.  (Tr. 26.)

**A.     The ALJ's analysis of Dr. Walz's opinion is not supportable on the record.**

The Court will address each of the ALJ's stated reasons for rejecting Dr. Walz's medical opinion in turn.  First, the ALJ's statement that Dr. Walz did not have access to the totality of Alvarez's medical records and was not familiar with SSA's evidentiary requirements is not supportable.  Dr. Walz's examination was ordered by SSA and paid for at SSA's expense as part of its evaluation of her claim for disability benefits.  Per SSA's own regulations, SSA only purchases a consultative examination "from a qualified medical source," meaning a medical source who is both licensed and has "the training and experience to perform the type of examination" requested, i.e., to provide an assessment of "the existence and level of [the claimant's] alleged impairments."  20 C.F.R. § 404.1519g.  Although Dr. Walz obviously did not have in her possession those medical records that were developed after the examination, there is no basis for the statement that she did not have access to all medical records available at the time of the examination.  This is not a reasonable basis for rejecting Dr. Walz's opinion.

Second, the ALJ's rejection of Dr. Walz's opinion as too heavily based on Alvarez's own subjective reports of her pain and other symptoms is also not supportable.  Dr. Walz was the *only* medical provider opining on Alvarez's functional limitations who examined Alvarez in person.  Dr. Walz's examination report described not just findings as to limitations of range of motion

and tenderness in the spine and joints but also observations of Alvarez as being in significant pain on the date of examination, struggling to walk without holding on to a table, and experiencing dizziness when attempting to perform basic musculoskeletal tests.  The Court therefore finds that it misrepresents the record for the ALJ to state that Dr. Walz's evaluation was predominantly based on her subjective reports.  Insofar as Dr. Walz considered Alvarez's subjective narrative of her pain and limitations, taking into consideration a claimant's subjective experience and complaints is expressly permitted under SSA's regulations.  *See* 20 C.F.R. § 404.1519n(c)(1).  There is no indication that Dr. Walz relied on Alvarez's descriptions of her own pain more heavily than her own clinical observations in reaching the conclusion that Alvarez had severe limitations in walking and standing.

Third, the ALJ's conclusion that Dr. Walz's opinions were too vague to credit is also not a legally valid reason for rejecting her findings.  Granted, Dr. Walz could have been more specific as to the precise nature of the "severe" limitations she found in Alvarez's walking and standing capabilities.  However, if the ALJ found Dr. Walz's findings to be too vague or generalized to understand, it was the ALJ's duty to further develop the record and explore the opinion further.  *See Kane v. Heckler*, 731 F.2d 1216, 1219–20 (5th Cir. 1984) (The ALJ has the affirmative duty to "develop a full and fair record [and] scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.") (internal citation and quotation omitted); *see also Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (Social Security proceedings are not adversarial, therefore it is the ALJ's responsibility to "investigate the facts and develop the arguments both for and against granting benefits.").  Moreover, regardless of whether Dr. Walz could have been more specific, it is still not reasonable for the ALJ to conclude that a person

with severe limitations in standing and walking—whatever the nature of those limitations—would be capable of walking and standing for two-thirds of the workday.

Fourth, the ALJ's rejection of Dr. Walz's opinion for not being "entirely consistent" with the medical records applied the incorrect standard and subjected the opinion to too searching of an inquiry. 20 C.F.R. § 404.1520c addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's RFC. Under this regulation, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* § 404.1520c(b)(2). In assessing the weight to give each medical opinion in the record, the ALJ must articulate how persuasive she finds each opinion and explain her conclusions with regard to the supportability and consistency factors. *Id.* "Supportability" means the extent to which a provider supports his medical opinion or prior administrative medical finding by "relevant . . . objective medical evidence and . . . explanations," whereas "consistency" means the extent to which the medical opinion or finding is "consistent with the evidence from other medical sources and nonmedical sources" in the record. *Id.* § 416.920c(c)(1)–(2).

Rather than evaluating the extent to which Dr. Walz's medical opinion is consistent with the medical records, the ALJ rejected the opinion for not being "entirely consistent" with the other medical evidence of record. While the regulations may support discrediting opinions that are *entirely inconsistent* with other medical evidence, they do not provide a basis for an ALJ discrediting an opinion in its entirety because it is not *entirely consistent* with other medical records. Moreover, a review of Alvarez's treatment records shows the records are substantially consistent with a finding of severe walking and standing limitations.

11

The medical records demonstrate that Alvarez was diagnosed with fibromyalgia prior to her alleged onset disability date and document Alvarez's ongoing pain treatment during the relevant period.  Alvarez saw her pain management physician at least once a month during the relevant period, and the records recount the challenges managing the severe pain caused by Alvarez's condition.  In May 2020, her pain doctor explained that Alvarez was suffering from "significant treatment resistant fibromyalgia" and prescribed ketamine infusion treatments "to help control increasing symptoms unresponsive to conventional medications."  (Tr. 352, 376.) Ketamine infusions began in the summer of 2020, but by August 2020, Alvarez reported both increased pain during and after the ketamine infusions and still described her pain as "constant, severe, and aching."  (Tr. 358.)  In September 2020, Alvarez had a psychological assessment in which she reported "crippling" back pain that prevented her from standing more than 10 minutes at a time and traveling anywhere for more than 30 minutes.  (Tr. 360–364.)  In November 2020, her pain management doctor noted that Alvarez still had no relief from the ketamine infusion and still battled severe pain.  (Tr. 338.)  Her physician recommended multiple successive days of infusions because Alvarez seemed to be "pretty resistant" to infusions that were spaced out in time.  (*Id.*)

For the subsequent months, pain records consistently demonstrate continued severe pain despite compliance with her mediation regimen; resistance to ketamine infusions; and attempts to come up with alternative methods of providing Alvarez with long-term relief.  (Tr. 403, 406, 410, 580.)  Alvarez ultimately submitted to autonomic nervous system testing, which yielded "clearly above average autonomic physical dysregulation" and early signs of peripheral autonomic neuropathy.  (Tr. 515.)  In-person examinations with her pain doctor resumed in July 2021 (earlier medical records were primarily via telehealth due to the COVID-19 pandemic).

(Tr. 584.)  Alvarez continued to complain of severe pain and demonstrated tenderness of the spine upon palpation and limited range of motion generally due to pain.  (*Id.*)  Alvarez continued to have flare-ups from her fibromyalgia, and because the pain continued to be unresponsive to conservative treatment, the doctor recommended electrical nerve stimulation (ENS) therapy. (Tr. 587, 595.)  Though Alvarez reported mild decreased severity of pain, she continued to suffer from flare-ups from her fibromyalgia through December 2021 and consistently presented with decreased range of motion in all joints and spine and tenderness of the thoracic and cervical spine.  (Tr. 584, 586, 588, 596, 600, 602, 604, 606, 609.)  Although there might have been some discrete medical records reflecting temporary improvement of Alvarez's condition, the overarching narrative expressed by the medical records is consistent with Dr. Walz's opinion finding severe postural and standing and walking limitations.

**B.     The ALJ's findings as to Alvarez's standing and walking capabilities is not supported by substantial evidence.**

The Commissioner does not adequately respond to any of the issues raised by Alvarez regarding the ALJ's evaluation of Dr. Walz's opinion.  Instead, the Commissioner simply argues there is substantial evidence in the record to support the ALJ's RFC determination.  Yet the only evidence cited in the Commissioner's brief as constituting substantial evidence for the decision is (1) the initial-level determination by Dr. Hedge that Alvarez can perform light work; and (2) numerous observations that Alvarez ambulated without difficulty in the pain records.  (Tr. 513, 580, 584, 586, 588, 590, 592, 594, 596, 598, 602, 604, 606).  In light of the totality of the medical records, these two pieces of evidence cannot sustain the ALJ's decision.

Neither the Commissioner nor the ALJ explain how notations of independent ambulation (inside the confined area of a doctor's office) translates to a finding of an ability to stand and walk for six out of eight hours in a work day on a sustained basis.  Similarly, Dr. Hedge's

opinion (which was the Commissioner's initial-level determination) cannot be viewed in a vacuum.  The reconsideration-level decision of the Commissioner (based on additional records throughout the first half of 2021 and Dr. Walz's examination) found Alvarez incapable of light work.  The ALJ rejected this opinion because it was based primarily on Dr. Walz's medical opinion (and the ALJ found that opinion unpersuasive for the reasons discussed *supra*).  (Tr. 26.)  Thus, for the same reasons the ALJ's analysis was flawed regarding Dr. Walz's opinion, the ALJ's assessment of Dr. Rawley's findings cannot stand.

Although not cited by the Commissioner in her brief, the other medical evidence cited in the ALJ's decision also does not provide substantial evidence—evidence from which a reasonable mind could conclude—that Alvarez can stand or walk six out of eight hours in a workday on a sustained basis.  For example, the ALJ cites a single record from October 2020 regarding an early ketamine infusion that resulted in at least 50% improvement in pain.  (Tr. 24, 382.)  None of the other pain records from 2020 or 2021 document this kind of success with the ketamine treatment.  To the contrary, as discussed above, the records demonstrate resistance to infusion treatments and worsening symptoms and pain.  "If there is one fundamental principle guiding judicial review of an ALJ decision in a Social Security case, it is that an ALJ may not ignore evidence inconsistent with his or her opinion without explanation." *Jefferson v. Barnhart*, 356 F. Supp.2d 663, 678 (S.D. Tex. 2004).  The ALJ failed to explain why she credited this early record over the weight of the subsequent ones demonstrating otherwise.

The same can be said of the ALJ's reference to an isolated primary care record from a December 2020 well-visit, in which Alvarez was described as "generally healthy" and in "no acute distress."  (Tr. 23, 487–88.)  No reasonable mind would elevate this discrete notation above the consistent medical records after December 2020 documenting the complexity of

Alvarez's pain and other symptoms from her fibromyalgia.  And if the ALJ believed this record undercut all of the pain records, she needed to explain why.

Finally, the ALJ repeatedly referenced the results of x-rays showing no fracture in Alvarez's left femur and only moderate arthritic changes in her knees as evidence of her ability to perform light work.  (Tr. 472–74.)  The ALJ does not explain how a lack of an acute leg fracture and moderate osteoarthritis in both knees discredits the numerous records regarding Alvarez's pain and its debilitating nature.

In summary, the ALJ failed to build a "logical bridge" between the documented evidence regarding Alvarez's postural limitations, her rejection of Dr. Walz's opinion, and her ultimate determination that Alvarez can walk or stand to the degree required to perform light work.  This was error, and this error was not harmless.  Whether Alvarez can perform work at the light or sedentary level is critical to the ultimate disability finding in this case.  The vocational expert testified at the ALJ's hearing that Alvarez cannot perform her past work if she is limited to sedentary work and she does not have transferable skills from her past jobs that translate to the sedentary level of exertion.  (Tr. 64.)  Because Alvarez is now an individual closely approaching advanced age, if limited to sedentary jobs and without transferable skills, she is disabled under SSA's grid rules.  20 C.F.R. Part 404, Supt. P, App'x 2, § 201.14.  "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."  *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).  Here, had the ALJ credited Dr. Walz's opinion and concluded that Alvarez was unable to perform light work, she could have found her disabled.  Alvarez is therefore entitled to remand.

Because Alvarez is entitled to remand for the foregoing reasons, the Court need not and will not address Alvarez's argument that the ALJ erred in her treatment of her subjective report

of her symptoms.  The Court reminds the ALJ, however, that the regulations provide that when making a disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529(a), 416.929.  The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary.  *See Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008) (per curiam).  In addition to reevaluating the medical records on Alvarez's standing and walking abilities, the ALJ should engage in the two-step process as set forth in the governing regulations and SSR 16-3p.  *See* Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017).  In doing so, the ALJ should carefully consider the following factors: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

## V.  Conclusion

Based on the foregoing, the Court finds that the ALJ failed to conduct a proper analysis of Dr. Walz's medical opinion of record, which calls into question the supportability of the ALJ's conclusion that Alvarez has the RFC to perform light work and stand and walk six out of

16

eight hours in a workday despite her limitations.  Because these errors could have affected the outcome of the proceedings,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Alvarez is not disabled is **VACATED** and this case **REMANDED** for further fact-finding consistent with this opinion.

SIGNED this 27th day of December, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE